Common Pleas Court of Cuyahoga County.

JONES V. BOARD OF ELECTIONS. *
CHANDLER V. CITY OF CLEVELAND ET AL. *

Decided December 1, 1931.

*Farquharson, Curtiss, Gillis, Gustafson & Miller,* for Elizabeth S. Jones.

*Demson, Phillips & Falsgraf,* for Harry I. Chandler.

*Ray T. Miller,* prosecuting attorney, *David Ralph Hertz,* assistant prosecuting attorney, and *Henry S. Brainard,* assistant city Law Director, for defendants.

OVERMYER, J. (Of Sandusky county sitting by assignment.)

The above cases were submitted at the same hearing, the first on a demurrer to the petition, the second on the petition and answer. Both suits are brought as taxpayers suits and seek the same relief, viz: an injunction to prevent the city of Cleveland from holding a special primary in January next, and a special election in

---

*Affirmed by the Court of Appeals December 9, 1931 and by the Supreme Court, January 8, 1932.

February next, for the election of a mayor of said city under the city charter as amended at the last general election, such mayor so elected to hold the office until the regular election for city officers in 1933, and until his successor is elected and qualified.

The city charter of Cleveland, as amended at the last general election by a vote of the electors of the city, provided for the election of a mayor of the city, an office not existing in the city government of said city under the charter in effect for some years. The new charter provides that said mayor shall be the chief executive officer of said city, and except as otherwise provided in the charter, he shall be elected for a term of two years, assume office on the first Monday following his election and serve until his successor is elected and qualified. (Sec. 68 of Charter.)

The new charter further provides that if at any time which is more than one year before the next regular municipal election, the office of mayor is vacant by reason of non-election, death, resignation, removal from office in any way except by recall election, removal of residence from the city, or from any other cause whatsoever, such vacancy shall be filled by special municipal elections. It further provides that if at the time this section takes effect, no eligible person has been elected to the office of mayor in the manner provided in this charter, then the office of mayor shall be deemed vacant by reason of non-election. It then provides that the special non-partisan primary election to select candidates for mayor shall be held on the first Tuesday after sixty days from the day on which said vacancy first occurs, and that on the fifth Tuesday following said non-partisan primary election the final special municipal election shall be held, and that the same rules governing regular primaries and elections under the charter shall apply to the special primary and election. It further provides that the person so elected as mayor at the special election shall assume the office immediately upon his election and

qualification, and shall serve until the first Monday following the next regular municipal election and until his successor is elected and qualified. It is further provided that during the existence of a vacancy in the office of mayor a department head shall be acting mayor, and designates the order of same, the first being the Director of Law. (All in Section 73 of the Charter.)

It is contended by the plaintiffs in both of these actions that the foregoing provisions of the charter having reference to a special election of a mayor are in contravention of Section 1, Article 17 of the Constitution of Ohio, which provides as follows:

"Section 1. Elections for State and County officers shall be held on the first Tuesday after the first Monday in November in the even numbered years; and all elections for all other elective officers shall be held on the first Tuesday after the first Monday in November in the odd numbered years."

The court finds that the new charter is now in effect, that the present time is more than one year before the next regular municipal election, (November, 1933,) and that there is a vacancy in the office of mayor by reason of non-election.

The petitions allege that the board of elections is about to proceed with preparation of ballots, etc., for such special primary election, and final special election, and if permitted to proceed there will result an illegal expenditure of the moneys of the city, and ask that the same be enjoined.

The demurrer to the petition in the Jones case presents two grounds, first, a general demurrer, that the petition does not state facts sufficient to constitute a cause of action, and second, that the plaintiff has not legal capacity to sue. To determine the first ground of demurrer the court must of necessity pass on the same questions of law as are raised in second case, the Chandler case, which was submitted on the merits. A decision in the Chandler case on the merits will determine the ruling on

the first ground of demurrer in the Jones case. We will therefore discuss the two cases from that standpoint first.

The constitutional amendment authorizing cities to adopt the charter form of government is Section 7, Article 18, and was adopted in September, 1912. The constitutional amendment fixing the time for the holding of elections in Ohio is Section 1, Article 17, and was adopted in November, 1905. It will therefore be noted that the latter amendment was adopted seven years before the so-called home rule amendment, and it of course follows that neither the framers of the 1905 amendment nor the people of Ohio who voted for it could have had in mind or anticipated the adoption of the home rule amendment seven years later. The 1905 amendment was adopted to govern and apply to elections as they then existed.

Seven years later the home-rule amendment was adopted, which provides as follows:

"Section 7, Article 18,—Any municipality may frame and adopt or amend a charter for its government and may, subject to provisions of Section 3 of this Article, exercise thereunder all powers of local self-government",

and Section 3 of the same Article above referred to reads as follows:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

Now, what was and is meant by the phrase, "all powers of local self-government"? It must be conceded that the constitutional amendment of 1912 is just as effective, just as much a part of the Constitution, just as much a mandate from the sovereign people of Ohio, as the constitutional amendment of 1905. The amendment of 1905 is clear and unambiguous and undoubtedly means that thereafter all general elections in Ohio shall be held at the times therein provided, but as before stated, they

could not then have had in mind the exigencies of government in a city which seven years later, by constitutional amendment, was·permitted to adopt a charter with "all powers of local self-government."

The amendment of 1912 gives cities a right to adopt a charter form of government and thereunder to exercise "all powers of local self-government." Of course the city under charter government could not, because of Section 3·cited above, "conflict with general laws", as to latter part of Section 3, and it may follow that a charter may not provide for a general election at a time different from that prescribed by the Constitution, and the charter of Cleveland, and now in force, complies with the 1905 amendment to the Constitution and provides for the regular elections in accordance with that article. But that same charter creates a new office, the office of mayor, which the previous charter did not have, and while the regular election of mayor shall hereafter be held in the years provided by the Constitution, there is now a vacancy in that office because the charter was amended at an election more than one year before the regular time for the election of a mayor, and the charter provides for a special election to fill that vacancy. Is this beyond the power of the city to do because if its non-conformity in that respect with the Constitution?

To answer this question we must look to what the Supreme Court and other courts have said is included in the phrase, "all powers of local self-government."

The first important point to note is that the Supreme Court of Ohio in more than one instance has referred to a charter as the "organic law" of the municipality which adopted it. See 107 O. S. 142, 88 O. S., 344, and cited with approval in 100 O. S., 344, where it is referred to as the "constitution" of the city by which it was adopted. See also 96 O. S., 182, 92 O. S., 485.

Taking the view that the charter is the "constitution" or "organic law" of the municipality operating under it, the courts have been liberal in the construction of the phrase "all powers of local self-government", to the end that

such city "acting in local self-government may work out their own political destiny, and their own political freedom, on their own initiative, and in their own way; and with this purpose in mind, should not the enactment of political alterations in the structure and substance of a charter government be given every possible presumption of validity? There is a presumption that changes enacted according to law in the organic constitution of a home-rule city are valid."

In the 100 O. S., at page 343, Judge Robinson says:

"Whatever difficulty this court may have encountered in accurately designating the subjects comprehended in 'local self-government', as contra-distinguished from 'local police, sanitary and other similar regulations', it has had no difficulty in arriving at the conclusion that the qualification, duties and manner of selection of officers, purely municipal, come within the purview of the provision granting a city 'local self-government' ".

In the 88 O. S., at page 344, Judge Johnson Says:

"It will not be disputed that one of the powers of government is that of determining what officers shall administer the government, which ones shall be appointed and which elected, and the method of their appointment and election. These are essentials which are confronted at the very inception of any undertaking, to prepare the structure of construction for any government.

Obviously such power would be included among 'all powers of local self-government' which any municipality has authority to exercise under Section 3 of Article 18, as to any officers of such municipality."

On page 352, Judge Johnson says further,—

"We have seen that the method of electing officers is a governmental function of .power, and when the officer to be elected is chosen solely for the performance of a municipal duty, *it is a municipal affair.*"

In 100 O. S., at page ·345, Judge Robinson says:

"This Court, then, having held that the manner of se-lecting purely municipal officers · is a subject of local

self-government, the provisions of the charter supplant the provisions of the General Code."

and citing 90 O. S., 305-310, quotes:

"That provisions adopted by a city might differ from the general laws within the limits defined was not only expected but the very purpose of the amendment was to permit such differences and make them effective."

This court does not say that the foregoing permits a charter city to do an unconstitutional act, but we do say that the courts are liberally construing all questions raised to permit the charter city to function and operate under the charter adopted by its citizens. The city could not, under its charter, call a special election to vote on any state officer, or any state question, or any officer created by the constitution, but the officer to be elected at this election does not come under any of these classifications. He will be strictly a municipal officer, created by the charter, limited in his powers and duties by that charter, and having no other governmental functions whatever. If a charter city has the power to create such an officer, which the Supreme Court says it has, why does it not have the power to say when and how he shall be elected when a vacancy exists?

The situation in such case presents an emergency, and the electors of Cleveland in their charter have decided how that emergency should be met, but as to regular municipal elections their charter complies with the state Constitution.

"This involves no lack of harmony that is essential and no loss by the state of its proper authority over the city and its people. The charter becomes the organic law of the municipality so far as such local powers are concerned. But the authority of the state is supreme over the municipality and its citizens as to every matter and every relationship not embraced within the field of local self-government. A fine illustration of the successful working out of the division and distribution of soverign governmental powers is furnished by the national and state governments in the American system. The tenth amendment to the constitution of the United States pro-

vides that 'powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people' ". (Judge Johnson, 92 O. S., 485).

In the 28 O. C. A., page 10, decided in 1914, the court says there is a difference between a "general election" and a "special election" and that "a general election is one held throughout the state at regularly recurring intervals for the purpose of electing public officers and possibly at the same time voting upon such public questions as might be then legally submitted, while a special election is one held at some other time to vote upon public questions or *to elect officers to fill vacancies."*

In 38 Ohio App., page 528, decided January 21, 1931, in the case of *City of Mansfield* v. *Endly*, the court says at page 535,—

"By the expression 'to exercise all powers of local self-government', we hold it to be understood that a municipal corporation may enact all such measures as pertain exclusively to it, in which the people of the state at large have no interest or concern, and which they have not *expressly withheld by constitutional provision."*

But it seems to this court that the whole question is settled by another constitutional provision adopted at the same time, the "home rule" amendment was adopted, viz: Article 18, municipal corporations, paragraph 20, entitled "Schedule adopted September 3, 1912", the latter part of which reads as follows:

"Any provision of the amendments passed and submitted by this convention and adopted by the electors, inconsistent with, or in conflict with, any provision of the present Constitution, shall be held to prevail."

The "home rule" amendment was one of the amendments passed and submitted by the convention and adopted by the electors. If a "home rule" city has the power to create a purely municipal office under its charter, and to provide how a vacancy in such office is to be filled, would it not have the power under the above provision

of the Constitution to provide *when* such vacancy shall be filled, even though it might not conform with a previous constitutional provision fixing a time for general elections? It seems so to this court. To that extent at least the "home rule" amendment of 1912 repeals by implication if not expressly the amendment of 1905, if it is in conflict.

It is urged that these special elections will cost the city of Cleveland a large sum of· money. This is no doubt true, and the city may have to get an exceptionally good mayor to be· worth the price, but the people of the city of Cleveland adopted this charter providing for such special elections knowing the cost, and a good mayor may save many times the amount involved before November, 1933. The people of the city created the office, decided how it shall be filled when vacant, and ought not to complain when the "organic law" which they created is put into operation. As Judge Wanamaker says in 107 O. S., page 5, speaking of county commissioners,—

"If vacant, the same could be filled by proper appointment, under provisions of the law; but the mere fact that the legislature saw fit to provide that the interval or interim should be filled by the people themselves, through popular election, cannot be urged, in a democracy where the people elect their public officials, as a valid reason against constitutionality of the law."

Holding the foregoing views, the first ground of demurrer in the Jones case is sustained, and the second ground becomes immaterial and is not decided. It would probably have to be overruled. If plaintiff does not amend, final judgment will be entered dismissing the petition at plaintiff's costs. Appeal bond fixed at $100.00.

In the Chandler case the finding, judgment and decree of the court is in favor of the defendants, injunction denied, at plaintiff's costs. Appeal bond fixed at $100.00.